**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROY L. JACKSON,

      Plaintiff,

v.

      Case No. 17-10671

      Hon. Marianne O. Battani

AFSCME MICHIGAN COUNCIL 25, LOCAL
1603, LaKAY AVANT, HURLEY MEDICAL
CENTER, and ERIKA McDERMITT,

      Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Roy L. Jackson commenced this action in this Court on March 3, 2017,

asserting claims of race discrimination under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.,* against his former employer, Defendant Hurley Medical Center

("HMC"); his supervisor at HMC, Defendant Erika McDermitt; his former collective

bargaining representative, Defendant American Federation of State, County, and

Municipal Employees ("AFSCME") Michigan Council 25, Local 1603 ("Local 1603"); and

an official of the Defendant union, Defendant LaKay Avant.  In support of these claims,

Plaintiff alleges that his employment was terminated for leaving his work site, but that

other employees of different races were not discharged despite engaging in the same or

similar conduct.  Apart from these claims of race discrimination, Plaintiff arguably

appears to allege that he was subject to racial harassment and retaliation; that

Defendants conspired to terminate his employment and to violate his civil rights; that Defendants violated his federal constitutional rights to due process and equal protection; and that the Defendant union breached its duty of fair representation.

Two motions presently are pending before the Court. First, Defendants HMC and Erika McDermitt seek an award of summary judgment in their favor under Fed. R. Civ. P. 56, arguing primarily that Plaintiff's claims of race discrimination should be dismissed for failure to exhaust the required administrative remedies, and that these claims also are subject to dismissal in light of Plaintiff's failure to establish a *prima facie* case of discrimination or show that Defendant HMC's stated reason for discharging him was a pretext for discrimination. Next, Defendants Local 1603 and LaKay Avant move for summary judgment on similar grounds, citing Plaintiff's apparent failure to exhaust his administrative remedies or to establish a *prima facie* case of discrimination against the Defendant union, and further asserting that Plaintiff has not marshaled evidentiary support for his apparent claim that the union breached its duty of fair representation. Plaintiff has responded to each of the Defendants' motions, through a pair of nearly identical briefs that are almost completely bereft of citation to authority and engage in virtually no analysis of the pertinent legal principles as applied to the facts of this case.

Having reviewed the parties' submissions in support of and in opposition to Defendants' motions, as well as the remainder of the record, the Court has determined that it is appropriate to decide the pending motions without a hearing. *See* Local Rule 7.1(f)(2), Eastern District of Michigan. For the reasons set forth below, the Court **GRANTS** Defendants' motions for summary judgment.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Defendant Hurley Medical Center ("HMC") hired Plaintiff Roy L. Jackson for the position of environmental tech, with duties similar to those performed by a custodian.[1]  Upon completing a probationary period, Plaintiff became a member of Defendant AFSCME Michigan Council 25, Local 1603 ("Local 1603").  At all relevant times, Defendant Erika McDermitt was Plaintiff's immediate supervisor.

In the time period of relevance here, April of 2015, Plaintiff worked the first shift, from 6:00 a.m. to 2:30 p.m., and his job duties for HMC consisted of cleaning and maintaining the Dutcher Building, a standalone building across the street from the main HMC facility.  (*See* Dkt. 20, Defendant HMC's Motion, Ex. G, Plaintiff's Dep. at 36-38; Ex. A, McDermitt Aff. at ¶ 2.)  The Dutcher Building contains offices and meeting and conference rooms, as well as apartments for physicians that are referred to as the Bachelors' Quarters ("BQ").  (*See* Plaintiff's Dep. at 37-38; McDermitt Aff. at ¶ 2.) Plaintiff testified that while he was assigned to the Dutcher Building, he took his work breaks in the BQ apartments because there was "no designated area" for workers to take their breaks, and he acknowledged that he had left paperwork from his outside business, an auto body shop, and articles of clothing in these rooms.  (Plaintiff's Dep. at 17-18, 39-44.)

According to Erika McDermitt, a fellow HMC employee, Debi Wright, contacted her on April 7, 2015 and advised her that "she thought someone was using one of the BQ apartments as a personal break room."  (McDermitt Aff. at ¶ 2.)  Upon entering the

---

[1]Plaintiff previously worked for HMC from 1997 until July of 1998, but the circumstances surrounding his 1998 separation from employment are not relevant here.

apartment with Ms. Wright and a public safety officer, Ms. McDermitt "saw a jacket on the sofa, which was the same jacket Plaintiff wore into work that morning," as well as "other items in the apartment that appeared to belong to Plaintiff." (*Id.* at ¶ 3.) Ms. McDermitt then attempted to locate Plaintiff in order to discuss this situation, but "he could not be found on [the] premises," and he also failed to respond to numerous attempts to page him. (*Id.* at ¶ 4.)

A "couple of days later," Ms. McDermitt asked the HMC public safety department to "review video surveillance camera footage and Plaintiff's identification card swipe data" in an effort to determine his whereabouts on April 7. (*Id.* at ¶ 5.) As a result of this review, it was "determined that Plaintiff left [HMC] property at some point earlier in the day on April 7, 2015, and returned to HMC at 2:37 p.m. to punch out." (*Id.* at ¶ 5.) Based on "suspicion that this was a frequent occurrence," HMC's public safety staff broadened its review of surveillance camera footage and card swipes and determined that on March 29, April 3, and April 6, Plaintiff had "left HMC property for 2 or 3 hours[] without swiping out." (*Id.* at ¶ 5.) This "absence of card swipes during those lengthy periods of time led [Ms. McDermitt] to conclude that Plaintiff left HMC numerous times without punching out and, thus, received money in his paycheck for time he did not actually work." (*Id.* at ¶ 7.)

Plaintiff disputes these investigative findings. First and foremost, he denies that he ever clocked in and then left the HMC premises without permission. (*See* Plaintiff's Dep. at 51-52.) Although HMC points to video footage and card swipe data that purportedly support Ms. McDermitt's conclusion that Plaintiff left the workplace without punching out, Plaintiff testified that "[t]hey have no footage of me," and that the person

shown in the video was not him.  (*Id.* at 52-53.)[2]  As for the card swipe data, Plaintiff

explained that he usually would pass through a tunnel when traveling between the main

HMC facility and the Dutcher Building, and that it was not necessary to swipe his card in

order to go back and forth between the two buildings via this tunnel.  (*See id.* at 54-56.)

Based on its determination that Plaintiff had left the workplace without

permission, HMC suspended Plaintiff for violating medical center policy and various

employee conduct rules.  (*See* Defendant HMC's Motion, Ex. C, Record of Disciplinary

Action.)  After further investigation, this suspension was converted to a termination of

employment effective May 6, 2015.  (*See* Defendant HMC's Motion, Ex. D, Notice of

Termination.)

Following his termination, Plaintiff requested that the Defendant union file a

grievance on his behalf, and the union did so.  (*See* Plaintiff's Dep. at 70-71.)  The

matter proceeded through the steps of the grievance process, culminating in a live

appeal held on May 2, 2016.  (*See id.* at 72-79; *see also* Dkt. 22, Defendant Local

1603's Motion, Ex. C, 5/10/2016 Denial Letter.)  Upon hearing Plaintiff's appeal, an

arbitration review panel determined that his grievance "lack[ed] merit for arbitration."

(5/10/2016 Denial Letter.)  The panel explained:

> The employer provides badge swipe records and video/screenshots of an
> individual they allege is [Plaintiff] exiting [from] and returning [to] the

---

[2]Ms. McDermitt, in contrast, states that "there is absolutely no doubt in [her] mind" that the individual in the video footage is Plaintiff, and she further asserts that this individual "was seen leaving HMC property in cars/pickups known to be owned by Plaintiff."  (McDermitt Aff. at ¶ 6.)  Likewise, HMC's labor relations officer, Barry Fagan, states in his affidavit that he is "absolutely certain that the person depicted [in the video footage] entering vehicles and leaving [HMC] property was in fact Plaintiff."  (Defendant HMC's Motion, Ex. B, Fagan Aff. at ¶ 7.)

facility. [Plaintiff] denies the individual in the video and in the photographs [is] him; however, the timestamps from the video and photographs line up with the badge swipe records provided in the file.

(*Id.*)  The panel further stated that because "a Live Appeal is the last step in the appeal process," Plaintiff's grievance would be "move[d] to final closure."  (*Id.*)

This suit followed on March 3, 2017, with Plaintiff asserting Title VII claims of race discrimination against HMC, Ms. McDermitt, Local 1603, and a union representative, LaKay Avant.  Although Plaintiff's complaint is not clear on this point and lacks separate counts setting forth distinct theories of recovery, he arguably also has asserted claims of racial harassment and retaliation against Defendant HMC and Ms. McDermitt.  He further appears to allege that Defendants violated his constitutional rights to equal protection and due process, and that Local 1603 breached its duty of fair representation owed to Plaintiff.

## III.    STANDARD OF REVIEW

Through the present pair of motions, Defendants seek an award of summary judgment in their favor on each of the claims asserted in Plaintiff's complaint.  Under the pertinent Federal Rule governing this motion, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

IV.    **ANALYSIS**

   A.    **Plaintiff's Title VII Claims Are Subject to Dismissal Due to His Failure to Timely Produce Evidence That He Exhausted His Administrative Remedies.**

As the first issue raised in each of their two pending motions, Defendants contend that Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* must be dismissed in light of Plaintiff's apparent failure to exhaust his administrative remedies. It is well established that "[a] plaintiff must exhaust [his]

administrative remedies before filing [a Title VII] suit in federal court." *Peeples v. City of Detroit,* 891 F.3d 622, 630 (6th Cir. 2018). This, in turn, entails (i) "timely fil[ing] a charge of employment discrimination with" the Equal Employment Opportunity Commission ("EEOC"), and (ii) "receiv[ing] and act[ing] upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')." *Peeples,* 891 F.3d at 630 (internal quotation marks and citation omitted).

In this case, Plaintiff alleged in his complaint that he filed "charges" with the EEOC, and that he secured the requisite right-to-sue letter before commencing this action. (Dkt. 1, Complaint at ¶¶ 2, 23.) Yet, while Plaintiff claimed that these documents were attached as exhibits to his complaint, (*see id.* at ¶¶ 2, 23), no such materials accompanied this pleading. Similarly, in response to interrogatories served by Defendants during discovery, Plaintiff stated that he had filed charges with the EEOC and received a right-to-sue letter, (*see* Defendant HMC's Motion, Ex. E, Interrogatory Responses at 3-4; Defendant Local 1603's Motion, Ex. D, Interrogatory Responses at 3-4), but he failed to provide copies of any such materials in response to Defendants' requests that he produce all documents referenced in his interrogatory responses, (*see* Defendant HMC's Motion, Ex. F, Document Requests at 3; Defendant Local 1603's Motion, Ex. E, Document Requests at 3). Consequently, at the time Defendants filed their present motions, Plaintiff had not produced any evidence in support of his allegations that he had properly exhausted his administrative remedies. It follows, in Defendants' view, that Plaintiff's Title VII claims are subject to dismissal on this ground.

In his responses to Defendants' summary judgment motions, however, Plaintiff has at long last produced at least some of the documentary evidence requested by

Defendants during discovery. Specifically, although Plaintiff's underlying EEOC charge is nowhere to be found in the record, he has submitted a copy of a right-to-sue letter issued by the EEOC on December 22, 2016. (*See* Dkt. 24, Plaintiff's Response, Ex. A, EEOC Notice of Suit Rights.) Thus, he argues that he has now produced evidence that he exhausted his administrative remedies before bringing this suit.

As Defendants correctly observe, however, Plaintiff's response is insufficient on two grounds. First, Plaintiff was obligated to produce his right-to-sue letter during discovery, either (i) as part of his initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(ii), which mandates the production of "all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," or (ii) at a minimum, in response to Defendants' discovery requests that specifically called for Plaintiff to disclose all documents evidencing his purported filing of an EEOC charge and pursuit of his administrative remedies. Moreover, once Plaintiff failed, for whatever reason, to provide his right-to-sue letter in response to Defendants' requests for this document, he had a duty to supplement his document disclosure upon learning that he had not produced this letter as required. *See* Fed. R. Civ. P. 26(e)(1)(A).

In light of these violations of Rule 26(a) and (e), Plaintiff is "not allowed to use" the right-to-sue letter in aid of his opposition to Defendants' summary judgment motions, unless his failure to disclose this letter "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As the Sixth Circuit has emphasized, "exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a) or (e)." *Howe v. City of Akron,* 801 F.3d 718, 747 (6th Cir. 2015); *see also Vance v. United States,* No. 98-5488, 1999 WL 455435, at *4 (6th Cir. June 25, 1999) ("[T]he required

sanction in the ordinary case is mandatory preclusion."). "Although Rule 37(c)(1) does authorize the court to consider less severe sanctions, these are secondary options," and "exclusion is the rule's primary directive." *Pullins v. NWS Michigan, Inc.,* No. 07-13146, 2008 WL 11355516, at *3 (E.D. Mich. July 2, 2008) (internal quotation marks and citation omitted). Moreover, it is Plaintiff's burden to show that his untimely production of the right-to-sue letter was either substantially justified or harmless, such that the sanction of exclusion is not warranted. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003). Plaintiff has not attempted to make such a showing, or even acknowledged that his untimely production of the right-to-sue letter after the close of discovery might be problematic under the rules governing the discovery process. Accordingly, the Court declines to consider the right-to-sue letter that Plaintiff has produced for the first time in his summary judgment briefing, and instead holds that Plaintiff's Title VII claims are barred for lack of evidence that Plaintiff exhausted his administrative remedies.

Even if the Court were to allow Plaintiff to introduce his right-to-sue letter into the record at this late date, Defendant HMC points out that this letter, standing alone, does not disclose precisely which administrative remedies Plaintiff might have pursued. Because Plaintiff still has not produced the underlying charge he filed with the EEOC, there is no way of knowing (i) which claims or theories he advanced in this charge, or (ii) who he named as parties to these claims. Most importantly, nothing in the right-to-sue letter (or elsewhere in the record) indicates that either HMC or Plaintiff's supervisor, Ms. McDermitt, were identified as parties in Plaintiff's underlying EEOC charge. To the contrary, Defendant HMC correctly observes that only the president of AFSCME

Michigan Council 25, Albert Garrett, was sent a copy of the right-to-sue letter, (*see* Plaintiff's Response, Ex. A, EEOC Notice of Suit Rights), which strongly suggests that Plaintiff brought his EEOC charge only against the union or Local 1603. Moreover, because Plaintiff has not provided a copy of his EEOC charge, there is no way of ensuring that Plaintiff exhausted his administrative remedies as to the claims of race discrimination, harassment, and (perhaps) retaliation that he seeks to pursue in this case. For this additional reason, the Court finds that the record lacks evidence that Plaintiff exhausted his administrative remedies as a prerequisite to bringing the Title VII claims asserted in his complaint.

> **B.  Plaintiff Has Failed to Establish a *Prima Facie* Case of Race Discrimination Against Any of the Defendants.**

Even assuming Plaintiff exhausted his administrative remedies before commencing this suit, Defendants next assert that Plaintiff has failed to establish a *prima facie* case of discrimination that could sustain his Title VII claims against HMC and Local 1603.[3] In response, Plaintiff insists that he has established the requisite *prima facie* case through evidence that, in his view, demonstrates that he was treated differently from other employees who purportedly engaged in similar conduct. As discussed below, the Court agrees with Defendants that the evidence cited by Plaintiff

---

[3]To the extent that Plaintiff also seeks to assert Title VII claims of discrimination or harassment against his former supervisor at HMC, Defendant McDermitt, or an official of Local 1603, Defendant Avant, the Sixth Circuit has held that Title VII's definition of an "employer" does not encompass individual employees or supervisors. *See Wathen v. General Electric Co.,* 115 F.3d 400, 405 (6th Cir. 1997); *see also Colston v. Cleveland Public Library,* No. 12-4103, 522 F. App'x 332, 336 (6th Cir. April 15, 2013). Thus, any Title VII claims of discrimination or harassment asserted against these individuals are subject to dismissal.

does not suffice to surpass even the modest threshold for establishing a *prima facie* case of discrimination.

In the absence of direct evidence of discriminatory motive, Plaintiff's Title VII claims of discrimination on account of his race are properly analyzed under the familiar burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). Under the first step of this analysis, Plaintiff must establish a *prima facie* case of discrimination by proving (i) that he is a member of a protected class, (ii) that he suffered an adverse employment action, (iii) that he was qualified for his position, and (iv) that he was "replaced by someone outside the protected class or w[as] treated differently than similarly-situated, non-protected employees." *Peeples,* 891 F.3d at 634. Once Plaintiff establishes this *prima facie* case, Defendants then must "articulate some legitimate, nondiscriminatory reason for" the action taken against Plaintiff. *Peeples,* 891 F.3d at 634 (internal quotation marks and citations omitted). If they are able to do so, then Plaintiff must show that the reasons given by Defendants are a pretext for unlawful discrimination. *See Peeples,* 891 F.3d at 634; *O'Donnell v. City of Cleveland,* 838 F.3d 718, 726-27 (6th Cir. 2016).

In their present motions, Defendants do not dispute Plaintiff's showing as to the first three elements of a *prima facie* case of discrimination, but instead focus solely on the fourth prong of this standard — namely, that Plaintiff was either replaced by someone outside his protected class or was treated differently from employees outside this protected class who engaged in similar conduct. Nothing in the record indicates that Plaintiff was replaced by someone of a different race. Rather, Plaintiff seeks to establish this element of a *prima facie* case through evidence that a number of his

fellow HMC employees "engaged in conduct similar to what [Plaintiff] was accused of but were not disciplined."  (Dkt. 24, Plaintiff's Response Br. at 6.)

As a threshold matter, Local 1603 correctly observes that this purported evidence of similarly situated employees who were not disciplined does not assist Plaintiff in establishing a *prima facie* case against his union representative.  Nothing in the record suggests that Local 1603 was involved in the disciplinary decision that led to Plaintiff's discharge.  Rather, the Defendant Local's role was limited to processing Plaintiff's grievance after his discipline and discharge.  Thus, to establish a *prima facie* case of discrimination against Local 1603, Plaintiff must produce evidence that this union defendant handled Plaintiff's grievance differently from the grievances of other employees outside of Plaintiff's protected class who were accused of similar violations of HMC's policies and rules.  No such evidence appears in the record — nor, in fact, does Plaintiff even make such an allegation in his complaint.  To the contrary, when Plaintiff was asked at his deposition whether he was asserting a claim of race discrimination against Local 1603, he responded that "I just can't answer that." (Plaintiff's Dep. at 79-80.)  He further testified that his claims against this union defendant were based on Local 1603's alleged failure to represent him, and not on any action it took on account of his race.  (*See id.* at 80.)  Accordingly, Plaintiff has not established a *prima facie* case of discrimination against Local 1603.

As for Plaintiff's claim against HMC, he first runs afoul of the same discovery violation discussed earlier — namely, an attempt to rely on evidence that he failed to disclose during discovery.  In this instance, Plaintiff seeks to establish a *prima facie* case of discrimination by resort to the affidavit of Lawanda Hardnett, who identifies

herself as HMC's environmental service manager at the time of the events giving rise to this suit. (*See* Plaintiff's Response, Ex. B, Hardnett Aff. at ¶ 3.)[4] As HMC points out, however, as part of the initial disclosures mandated under Rule 26(a)(1), Plaintiff was required to identify "each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support [his] claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Plaintiff did not name Ms. Hardnett in his initial disclosures as an individual who was likely to possess discoverable information — indeed, HMC states without contradiction that Plaintiff made no initial disclosures whatsoever. Nor did he identify Ms. Hardnett as a witness at any other point during discovery, "despite multiple opportunities to do so." (Dkt. 26, Defendant HMC's Reply Br. at 2.) Consequently, under the authorities cited earlier, Plaintiff is "not allowed to use" Ms. Hardnett's statements in her affidavit as a basis for opposing Defendant HMC's motion for summary judgment. Fed. R. Civ. P. 37(c)(1); *see also Jack Cooper Transport Canada, Inc. v. TCB Importing, LLC,* No. 16-13812, 2018 WL 836448, at *2-*3 (E.D. Mich. Feb. 13, 2018) (declining to consider an affidavit cited in a party's summary judgment briefing, where the affiant had not been identified in the party's initial disclosures or later in discovery); *Pullins,* 2008 WL 11355516, at *3-*4 (same).

---

[4]Briefly, Ms. Hardnett asserts in her affidavit that Plaintiff's supervisor, Defendant McDermitt, "treated [Plaintiff] differently than she would treat the white employees under her supervision." (*Id.* at ¶ 7.) She further contends that Ms. McDermitt acted outside of the usual chain of command in disciplining Plaintiff, and that Ms. McDermitt and other management-level employees at HMC "would get together in their attempt to find some reason to discharge[]" Plaintiff. (*Id.* at ¶¶ 8-10.)

Absent Ms. Hardnett's affidavit, Plaintiff relies solely on his own deposition testimony in order to establish the "different treatment" element of his *prima facie* case of discrimination. Specifically, he points to this testimony as identifying "a number of employees who engaged in conduct similar to what [Plaintiff] was accused of but were not disciplined." (Plaintiff's Response Br. at 6 (citing Plaintiff's Dep. at 49-50).) Yet, in the cited passage of his deposition testimony, Plaintiff merely identified two fellow employees who took breaks in the BQ rooms at the Dutcher Building but were not disciplined or discharged. (*See* Plaintiff's Dep. at 49-50.) Even assuming Plaintiff has the requisite personal knowledge about the activities of his two co-workers and their disciplinary records, the record shows that Plaintiff was not discharged for taking breaks in the BQ rooms. Rather, his employment was terminated due to his "flagrant[] violat[ion]" of employee conduct rules and HMC policy by "leaving work for long periods of unauthorized time on several occasions while still on the clock." (Defendant HMC's Motion, Ex. D, Notice of Termination; *see also* McDermitt Aff. at ¶¶ 7-8.)

Because Plaintiff has not identified any co-workers who engaged in this or similar misconduct but were allowed to remain on the job, he has failed to satisfy the fourth and final element of a *prima facie* case of race discrimination against Defendant HMC. Consequently, he cannot go forward with his Title VII claims of race discrimination against any of the Defendants, and Defendants therefore are entitled to summary judgment in their favor on these claims.

**C.      Plaintiff Has Failed to Produce Evidence in Support of Any Other Theory of Recovery Arguably Asserted in His Complaint.**

Apart from his Title VII claims of race discrimination, Plaintiff arguably has advanced other theories of recovery in his complaint. In their present motions, Defendants contend that Plaintiff has failed to provide evidentiary support for any such additional claims he might be pursuing in this case. They further argue that Plaintiff has abandoned most of these additional claims by failing to address them in his responses to Defendants' motions. The Court agrees on both scores.

At points in his complaint, Plaintiff appears to suggest that Defendants created a hostile work environment in which he was unlawfully harassed on account of his race. (*See* Complaint at ¶¶ 5, 7-8.) To the extent that these allegations are meant to support a Title VII claim of racial harassment, the Court previously explained that Plaintiff has failed to produce evidence that he exhausted his administrative remedies before bringing his Title VII claims in federal court. Because this requirement of administrative exhaustion applies equally to Title VII claims of discrimination and hostile work environment harassment, any claims that Plaintiff might be pursuing under the latter theory of recovery are also subject to dismissal. Moreover, Plaintiff has not even mentioned a claim of race-based harassment in his responses to Defendants' motions, much less identified any evidentiary support for this theory of recovery, so any such claim has been abandoned.

Next, Plaintiff seemingly alleges in his complaint that one or more Defendants retaliated against him after he engaged in protected activity. (*See* Complaint at ¶¶ 8, 11-12.) Again, to the extent that Plaintiff means to assert a claim of retaliation under Title VII, this claim would be subject to dismissal due to Plaintiff's failure to exhaust his administrative remedies. Alternatively, if Plaintiff seeks to pursue a claim of retaliation

under Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq.,* (*see* Complaint at ¶ 11), Defendant HMC observes in response that this claim would be barred as brought well outside the statute's 90-day limitation period, *see* Mich. Comp. Laws § 15.363(1). Finally, Plaintiff has abandoned this claim by failing to address it in his responses to Defendants' motions.

Plaintiff's complaint also makes passing reference to the guarantees of equal protection and due process under the Fourteenth Amendment to the U.S. Constitution. (*See* Complaint at ¶¶ 9-10.) Yet, beyond his conclusory assertion that Defendants somehow "violat[ed]" the Equal Protection and Due Process Clauses of the Fourteenth Amendment, thereby giving rise to claims under 42 U.S.C. § 1983, (*id.* at ¶ 9), Plaintiff alleges no facts that, if proven, would establish such a constitutional violation. Neither does he mention this theory of recovery in his responses to Defendants' motions, much less endeavor to explain how the record might support a § 1983 claim against any of the Defendants.[5] Accordingly, Plaintiff has abandoned any such claim he might have asserted in his complaint.

Finally, Plaintiff appears to allege that Defendant Local 1603 breached a duty of fair representation owed to him by his union representative. (*See* Complaint at ¶¶ 20, 24-28.) In opposing Local 1603's request for summary judgment in its favor as to this claim, Plaintiff tersely asserts in a single paragraph (i) that although the defendant union viewed the evidence against him as "insurmountable," the video footage relied upon by the union in making this determination did not, in fact, capture Plaintiff "leaving the

---

[5]It also is doubtful that Local 1603 or the union official named as a defendant, LaKay Avant, would qualify as state actors who are subject to liability under § 1983.

hospital while he was supposed to be working," (ii) that in response to the union's request for evidence to support his challenge to the video footage and other materials that purportedly justified his discharge, Plaintiff "obtained affidavits from six individuals who worked with him on the dates in question and saw him at work," and (iii) that the union "should have considered the affidavits" in handling his grievance "because they rebutted the evidence against" Plaintiff.  (Dkt. 25, Plaintiff's Response Br. at 6.)

As observed by Local 1603, however, Plaintiff's argument on this point rests on a mischaracterization of the record.  Plaintiff himself testified that in support of his written appeal of the defendant union's decision not to take his grievance to arbitration, he submitted the co-worker affidavits that he now claims Local 1603 "should have considered."  (*See* Plaintiff's Dep. at 74-75.)  Then, when this written request was denied and Plaintiff sought a live appeal, he again was given the opportunity to present documentation — presumably including the affidavits of his co-workers — to the arbitration review panel.  (*See id.* at 75, 77-78.)  Thus, while Plaintiff suggests that the Defendant local failed to consider the co-worker affidavits, he offers no evidence to support this conjecture.  To the contrary, the arbitration review panel recognized that Plaintiff had "denie[d] that the individual in the video" was him, but it nonetheless concluded "[u]pon review of the evidence" that Plaintiff's "grievance lacks merit for arbitration."  (Defendant Local 1603's Motion, Ex. C, 5/10/2016 Denial Letter.)  Under this record, it cannot be said that Local 1603 failed to consider the documentation submitted by Plaintiff in support of his grievance.

This leaves only Plaintiff's more generalized complaint that Local 1603 breached its duty of fair representation by electing not to take his grievance to arbitration.  As

noted by the Defendant union, Plaintiff was employed by a public hospital, and the union's collective bargaining agreement with this hospital therefore is governed by the Public Employment Relations Act ("PERA"), Mich. Comp. Laws § 423.201 *et seq.* Like the federal-law standards imposed on unions that represent private sector employees, the duty of fair representation owed by a union to public sector employees under the PERA mandates that the union's conduct toward members of the collective bargaining unit must not be arbitrary, discriminatory, or in bad faith. *See Goolsby v. City of Detroit,* 419 Mich. 651, 358 N.W.2d 856, 861-62 & n.5, 870 (1984); *Taylor School District v. Rhatigan,* 318 Mich. App. 617, 900 N.W.2d 699, 711 (2016). As already discussed, to the extent that Plaintiff accuses Local 1603 of engaging in discrimination through its decision not to pursue arbitration of his grievance, he has failed to produce any evidence, whether of differential treatment or otherwise, that could sustain this allegation of discrimination. Neither has he alleged or produced evidence that the Defendant local acted in bad faith in its handling of his grievance.

Thus, to sustain his claim that Local 1603 breached its duty of fair representation, Plaintiff must point to evidence that gives rise to an issue of fact as to whether the Defendant local acted arbitrarily in electing not to take Plaintiff's grievance to arbitration. The Michigan courts have emphasized that a bargaining unit employee does not have "an absolute right to have his grievance taken to arbitration," and that the union instead has "considerable discretion to determine which grievances to press and which to abandon." *Demings v. City of Ecorse,* 423 Mich. 49, 377 N.W.2d 275, 284 (1985); *see also Goolsby,* 358 N.W.2d at 863. If the union exercises this discretion to reach a "reasoned, good-faith, non-discriminatory decision not to process a grievance," then it

19

has not "acted arbitrarily [or] breached its duty of fair representation." *Goolsby,* 358

N.W.2d at 871 (footnote omitted); *see also Knoke v. East Jackson Public School*

*District,* 201 Mich. App. 480, 506 N.W.2d 878, 881 (1993) (explaining that a union's

"considerable discretion" in handling a grievance encompasses the authority to "assess

each grievance with a view to individual merit").

Plaintiff has not pointed to any evidence in the record that might rebut or

undermine Local 1603's showing that it engaged in a reasoned decision-making

process in declining to pursue arbitration of Plaintiff's grievance. In reaching this

decision, the Defendant local acknowledged Plaintiff's denial that he had left the

workplace without permission, but it pointed to competing evidence produced by HMC,

including "badge swipe records and video/screenshots of an individual [it] allege[s] is

[Plaintiff] exiting [from] and returning [to] the facility." (Defendant Local 1603's Motion,

Ex. C, 5/10/2016 Denial Letter.) Upon reviewing this evidence and convening a live

appeal at which, by his own admission, Plaintiff appeared and provided documentation

in support of his grievance, an arbitration review panel determined that Plaintiff's

"grievance lacks merit for arbitration." (*Id.*) Nothing in this decision or the process

leading to it is suggestive of the sorts of conduct described by the Michigan Supreme

Court as evidencing arbitrariness in a union's handling of a grievance on behalf of a

member of the collective bargaining unit. *See Goolsby,* 358 N.W.2d at 872.

Accordingly, Local 1603 is entitled to summary judgment in its favor on Plaintiff's claim

that the Defendant union breached its duty of fair representation.

**V.     CONCLUSION**

For these reasons, the Court **GRANTS** the August 28, 2018 motion for summary judgment filed by Defendants Hurley Medical Center and Erika McDermitt (Dkt. 20), and also **GRANTS** the August 29, 2018 motion for summary judgment filed by Defendants AFSCME Michigan Council 25, Local 1603 and LaKay Avant (Dkt. 22).

**IT IS SO ORDERED.**

Date:   March 28, 2019                    s/Marianne O. Battani
                                          MARIANNE O. BATTANI
                                          United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 28, 2019.


                                          s/ Kay Doaks
                                          Case Manager